**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN SAVINGS BANK, F.A., et al., | ) | |
| | ) | No. 92-872C |
| Plaintiffs, | ) | (Senior Judge Smith) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR ENLARGEMENT OF TIME FOR FILING OF JOINT STATUS REPORT AND POSTPONEMENT OF STATUS CONFERENCE**

Pursuant to this Court's oral order at the July 31, 2008 status conference, defendant, the United States, respectfully submits this reply in support of its motion for 1) enlargement for the filing of the joint status report with plaintiffs, American Savings Bank, F.A., Keystone Holdings, Inc., Keystone Holdings Partners, L.P., N.A., Capital Holdings, Inc., New American Capital, Inc., and New American Holdings, Inc. (collectively "plaintiffs"); and 2) postponement of the status conference. As we discuss below, plaintiffs' September 9, 2008 response ("Pl. Resp.") misstates several aspects of the record. Furthermore, plaintiffs' ignore that their proposed schedule prejudices us because it improperly contains, among other problems, unrealistically compressed periods for us to depose plaintiffs' witnesses and respond to their still-undefined damages claims. Therefore, for the reasons set forth below and in our motion, we respectfully request that the Court enlarge the time for filing of the joint status report until October 31, 2008, with a status conference to be set as soon thereafter as is convenient for the Court.

**DISCUSSION**

Plaintiffs' response misstates the record in multiple material respects. Plaintiffs' misstatements are proffered in an effort to justify plaintiffs' proposed schedule that apparently would serve plaintiffs' interests, but which would materially prejudice the Government.

First, plaintiffs incorrectly claim that we did not comply with the Court's order "for a joint status report with each party setting forth a proposed schedule and indicating whether it agreed or disagreed with the other party's proposals." Pl. Resp. at 1-2. The Court's order was for each party to state whether they "agree or disagree, stating each party's position if you disagree." Transcript (July 31, 2008) at 37 (attached as Exhibit A). We have conformed with the Court's order by informing the Court that plaintiffs' letter of August 25, 2008, which contained plaintiffs' description of its proposed damages, did not contain sufficient detail in terms of methodology, witnesses, or supporting evidence for us to propose an appropriate schedule, and, thus, that we cannot agree with plaintiffs' proposed schedule. Once plaintiffs provide such a description of their proposed damages that contains these necessary, but missing, details, which they have represented they will be able to do by October 17, 2008, we anticipate that we will be able to propose an appropriate schedule.

Second, plaintiffs incorrectly state that the Court "rejected" our position that we should await plaintiffs' "precise computation" of their damages prior to submitting a proposed case schedule. Pl. Resp. at 1. We made clear at the July 31, 2008 status conference that our ability to reach agreement with plaintiffs was contingent upon the level of detail plaintiffs were able to provide in advance of the joint status report. Pl. Resp. at 2; Transcript (July 31, 2008) at 40. As set forth in our motion, plaintiffs' initial disclosure did not contain sufficient detail for us to

make a meaningful analysis of their claims, much less a "precise computation" of their alleged damages, and we therefore were not in a position to propose a case schedule. Thus, our report to the Court complied with the Court's order to determine whether we can "agree or disagree" with plaintiffs, indicating that we disagree with their proposed schedule because we lack sufficient information. Transcript (July 31, 2008) at 37.

Third, plaintiffs incorrectly claim we have identified "no legitimate reason" to postpone the September 12 status conference. Pl. Resp. at 2. We have clearly and succinctly identified the reason for the requested postponement: plaintiffs' failure to provide meaningful disclosure of their damages claims. Plaintiffs simply choose not to acknowledge this reason. Plaintiffs expect us – and the Court – to set a March 2009 trial date without any disclosure of the methodology, witnesses, and evidence underlying their still-undefined damages claims – or even the dollar amount they seek in damages. This level of disclosure falls well short of the *pre-discovery* disclosures required by Federal Rule of Procedure 26(a), not to mention the level of disclosure provided through discovery. Thus, a postponement of the status conference until plaintiffs provide such disclosure is appropriate, and avoids an unnecessary expenditure of the Court's and the parties' resources.

Fourth, plaintiffs incorrectly claim that our motion for enlargement is "one in a very long line of requests for adjournments and delays," and that their requested trial date is appropriate "given the long history of this case." Pl. Resp. at 2-3. First, as indicated in our motion, we are anxious to move this case along as quickly as possible without compromising our ability to defend properly the Government's interests in this case. Second, the length of the case is a result of plaintiffs' strategic decisions, not ours. The current case status is purely a consequence of

plaintiffs' tactical decision to move for final judgment upon summary judgment in January 2005 based upon a claim determined by the United States Court of Appeals for the Federal Circuit to be legally erroneous. If plaintiffs had submitted their evidence at trial concerning any damages claims they might have had for their Warrant Forbearance claim – as they had every opportunity to do – we would not have the current need to resolve plaintiffs' entirely new claims upon remand. Similarly, our inability to propose an appropriate case schedule at this time is solely due to plaintiffs' failure to provide a meaningful disclosure of their damages claims.

Fifth, plaintiffs erroneously contend that the March 2009 trial date is "appropriate" given "defendant's intimate familiarity with the available damages theories in the *Winstar*-related cases." Pl. Resp. at 3. The error in this particular contention is demonstrated by plaintiffs' own actions since the Federal Circuit's decision remanding the Warrant Forbearance claim on March 20, 2008. Plaintiffs apparently do not have the same "familiarity" with their own claims that they contend we should have because, although plaintiffs' report to the Court was on September 5, 2008, almost six months after the Federal Circuit's decision, plaintiffs have managed only to generate the level of detail associated with a complaint, rather than a "precise computation" of damages. For plaintiffs to claim that the parties should be ready for trial in March 2009, six months after the status conference, is unrealistic given that it has taken them longer than that to learn the details of their own claims, despite their awareness of the remand.

Plaintiffs' proposed March 2009 trial date is particularly prejudicial to us because it does not provide us with a meaningful opportunity to analyze and respond to their still-undefined claims. Although plaintiffs have taken close to six months after the Federal Circuit's decision, and have only been able to provide a listing of damage categories associated with a complaint,

they still propose to wait until October 17, 2008, to submit their calculation and analysis of their damages claims – 42 days after their September 5, 2008 report to the Court. Despite taking this time to present their claim, plaintiffs somehow expect us to complete *all* discovery of their as-yet undefined damages claims by November 14, 2008 – *28 days after their calculation and analysis, and 14 days less than the 42 days plaintiffs represent they will need to turn their description into a "precise computation."* Plaintiffs thus somehow expect us to understand plaintiffs' models seven times faster than the plaintiffs themselves. Although we appreciate the compliment implicit in plaintiffs' request, we ask the Court to reject plaintiffs' unfair proposal.

Similarly, plaintiffs propose that we be required to provide expert reports within 21 days after the conclusion of the truncated 28-day discovery period. Thus, under plaintiffs' proposed schedule, we would have less than two months to identify and retain experts, then have the experts prepare a report that would respond in detail to all of plaintiffs' claims. This is compared to the seven months plaintiffs plan to take to generate their own analyses. Such a proposed schedule is inherently prejudicial.

Sixth, plaintiffs claim that their proposed March 2009 trial date is appropriate due to our "conscious and deliberate decision not to submit any pre-trial plan." Pl. Resp. at 3. Our inability to propose a case schedule at this time is purely a consequence of plaintiffs' failure to provide a meaningful disclosure of their damages claims. We are simply unable to submit a pretrial plan because of plaintiffs' own actions, not because of our own preference. In order for a trial date to be appropriate, both parties must have had the opportunity to prepare their claims and defenses, but plaintiffs' proposal achieves none of these goals. Indeed, plaintiffs ask the Court to set an

extremely tight trial schedule, with a minimal trial length, despite plaintiffs' failure to provide any meaningful disclosure of the nature of their claims.

Lastly, in the spirit of our July 31 proposal, and in our eagerness to resolve this and other Winstar-related cases, we stated in our motion that we believed that trial could begin in September 2009, with a trial length of three to six weeks, although interim steps would have to await receipt of plaintiffs October 17 disclosures. Any time for possible mediation would necessarily extend this schedule. We remain optimistic that we can make progress toward a joint trial schedule after receiving plaintiffs' October 17 disclosures, if those disclosures provide sufficient information for a meaningful analysis. The enlargement we are requesting would create a minimal lengthening of the schedule, if any, because any discovery would necessarily begin only after plaintiffs submit their calculation and analysis on October 17. We are as anxious as the plaintiffs and the Court to resolve this matter in as expeditious a manner as is possible, while at the same time properly defending against plaintiffs' as-yet unclear claims.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court enlarge the time for filing of the joint status report until October 31, 2008, with a status conference to be set as soon after October 31, 2008, as is convenient for the Court.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

s/ John J. Todor
JOHN J. TODOR
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 616-2382
Facsimile: (202) 514-8640

Attorneys for Defendant

Of Counsel:

SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
VINCENT PHILLIPS
Trial Attorneys
Civil Division
Department of Justice

September 10, 2008

**CERTIFICATE OF SERVICE**

I certify that on this 10th day of September 2008, I caused the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR ENLARGEMENT OF TIME TO FILE JOINT STATUS REPORT AND POSTPONEMENT OF STATUS CONFERENCE" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ John J. Todor

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN SAVINGS BANK, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Docket No. 92-872C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Thursday,
July 31, 2008

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on August 21, 2008.)

APPEARANCES:

On Behalf of Plaintiff:

MELVIN GARBOW, Esquire
KENT YALOWITZ, Esquire
MICHAEL JOHNSON, Esquire
JOSHUA WILSON, Esquire
Arnold & Porter, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

to trial without the opportunity for the Court to consider the matter that way.

But we're happy to discuss filing a joint status report with the Plaintiffs. However, as Plaintiffs indicated, we might be able to agree to some things. There might be some things that we won't be able to agree to.

THE COURT: Okay. Mr. Todor, thank you.

MR. TODOR: Thank you, Your Honor.

THE COURT: What I was going to suggest in terms first, I think the joint status conference makes -- or joint status report followed by a conference makes sense. It also gets the parties talking to each other, which obviously is important in setting up schedules. What I was going to suggest is a report to the Court by say the 12th of September, a joint status report. Is that all right with the parties?

MR. YALOWITZ: We don't need that much time, Your Honor. I think we could do it two weeks from tomorrow.

THE COURT: Mr. Todor?

MR. TODOR: We think it would be helpful if the Plaintiffs would submit that or give us that statement of their proposed damages outline. I think

that would make us a lot more able to say what we would need in terms of trial preparation. So if the Court would envision Plaintiffs giving that statement to us, I think we could certainly work out the joint status report by September 12 if that were the case.

THE COURT: Okay. Well, I think the process needs to be also obviously a face meeting with counsel, so why don't we say Plaintiff begin the process and have something -- why don't you have something available by the end of August so we have at least some preliminary report. Let's see. How about the 26th, have an oral argument that day? No, I may be away for a few days. How about why don't we have a status conference on the 12th of September with the final joint status report, whether you agree or disagree, stating each party's position if you disagree. Submit it to the Court by the 5th of September. The Court can review it and we can have a meaningful discussion on the 12th, and the Court will be prepared to make decisions on the schedule.

Either of you have anything else on that?

MR. YALOWITZ: That sounds fine, Your Honor.

MR. TODOR: That's fine.

MR. YALOWITZ: One comment in response to Mr. Todor's --

THE CLERK: You need to be at the microphone. Sorry.

MR. YALOWITZ: One comment just on the subject of mediation. Both sides are interested in mediation. It's a very good idea, and we're going to explore it, but I don't want that to hold up the progress of the case. I think it's extremely important that the parties be motivated to resolve their dispute voluntarily if they're going to do so by the knowledge that the case is moving toward judgment in the absence of agreement. So we're interested in mediation, but we don't want to hold the case up for that, which I think is consistent with the Court's view.

THE COURT: Yes. I mean, the Court has found by far the most effective settlement device is a firm trial date, and more cases have been settled by ADR or mediation have been settled by that fact than any other technique.

MR. YALOWITZ: How does January of '09 look for the Court's calendar?

THE COURT: That may look a little hard. I think we're maybe talking about later. It's probably still going to be in Washington.

MR. YALOWITZ: Right.

THE COURT: So it may be possible, but probably more likely February or March.

MR. YALOWITZ: That would be great.

THE COURT: But anyway, let's consider mediation. The Court thinks obviously we should move ahead, but if either side has any ideas, I ask you share with them each other, and if you jointly feel that the Court can do anything to help, the Court would certainly be happy to do that. We have our ADR procedure where many try with our mediation judge, and that's a possibility. We also have I know a core of neutral mediators, third party neutrals I guess, and also the judiciary is doing a lot more with professional mediators, and that's also a possibility of using professional mediators from the judiciary to help this process. So any of those options, certainly the Court will be happy to support any of those options or any others you come up with for a mediation system or a mediator.

So I'll let you proceed on that. The parties, if you need the Court's assistance, obviously we can hold a status conference on fairly short notice to see what we can do to help. Anything else? Mr. Todor?

MR. TODOR: Yes, Your Honor. With respect

to the joint status report on September 5, would the Court like to set a date or the Plaintiffs propose to produce to us this statement outlining their damages claim, say a week or 10 days before that?

THE COURT: Mr. Yalowitz?

MR. YALOWITZ: That's fine. I think we can probably do it even before then. It wouldn't be a computation. It would be a description of the categories of damages, the basis for the theories. Then we would have a more precise computation further on, but it would give the Defendant an idea of what the shape of trial would be based on their prior experience with similar cases.

THE COURT: Okay.

MR. TODOR: Plaintiffs' counsel also I think used the word 26(a). I mean, it wouldn't be a precise analog, but if the Plaintiffs have an idea of what they're looking at in terms of witnesses, in terms of the type of proof, obviously any information number one that would be new and two will be helpful to us in seeing what agreements we can reach with Plaintiffs with respect to the schedule.

THE COURT: Okay. I mean, it does seem necessary for the Court to set a date for that, but we'll rely on counsel's cooperation.